## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARY RUFFIN-THOMPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 03 C 0683 |
| vs. | ) | Judge Leinenweber |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

NOV 0 5 2003

**FILED**

NOV - 4 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### NOTICE OF FILING

Ms. Kerry Skiermont
Jones, Day, Reavis & Pogue
77 W. Wacker Dr.
Chicago Illinois 60601

        PLEASE TAKE NOTICE THAT ON November ____4____, 2003, there was filed in the United States District Court for the Northern District of Illinois, **Plaintiff's Memorandum of Law in Response to Defendant, EXPERIAN INFORMATION SOLUTIONS', Motion for Summary Judgment**, a copy of which is attached hereto and herewith served upon you.

                                        By: _____
                                                Larry P. Smith

| | |
|---|---|
| Name: | KROHN & MOSS, LTD. |
| Attorneys For: | Plaintiff |
| Address: | 120 West Madison Street, 10th Floor |
| City: | Chicago, Illinois 60602 |
| Telephone: | (312) 578-9428 |
| Firm I.D. No. | 33599 |

### PROOF OF SERVICE

        I, Larry P. Smith, an attorney, certify that I served this notice by mailing it to the above named party or parties at the above referenced addresses on November ____4____, 2003, by 5:00 p.m. from 120 West Madison, Chicago, Illinois 60602, in an envelope with first class postage prepaid thereon.

                                        By: _____
                                                Larry P. Smith

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED

NOV 0 5 2003

MARY RUFFIN-THOMPKINS,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)　　Civil Action No. 03 C 0683
　　vs.　　　　　　　　　　　　)　　Judge Leinenweber
　　　　　　　　　　　　　　　　)
EXPERIAN INFORMATION SOLUTIONS,　)
　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　)

FILED

NOV - 4 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL**
**FACTS AS TO WHICH THERE IS A GENUINE ISSUE THAT DOES NOT**
**ENTITLE THE DEFENDANT TO A JUDGMENT AS A MATTER OF LAW**

NOW COMES the Plaintiff, MARY RUFFIN-THOMPKINS (Plaintiff"), by and

through her attorneys, KROHN & MOSS, LTD., and hereby respectfully submits this

response to Defendant, EXPERIAN INFORMATION SOLUTIONS', Statement of Facts,

in accordance with LR 56.1 in response to Defendant's Memorandum of Law in Support

of its Motion for Summary Judgment.

1.　　　Undisputed.

2.　　　Undisputed.

3.　　　Undisputed.

4.　　　Undisputed.

5.　　　Undisputed.

6.　　　Undisputed.

7.　　　Undisputed.

8.　　　Undisputed.

9.      Undisputed.

10.     Undisputed.

11.     Disputed.  See Plaintiff's Dispute Letter to Experian Dated October 3, 2002, attached hereto as Exhibit B.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed.

15.     Undisputed.

16.     Undisputed that Experian mailed confirmation of the results of US Bank's investigation and disputed that Experian conducted a reinvestigation.  See Plaintiff's Statement of Facts No. 14 through 17.

17.     Undisputed.

18.     Disputed.  See Plaintiff's Experian Revised Disclosure Dated April 5, 2003, attached hereto as Exhibit L.

19.     Disputed.   See Defendant Experian's Exhibits 11 and 12.   Specifically Defendant's Exhibits state that the companies, Premier Bank Card and Providian National Bank, with which Plaintiff applied for credit and was denied credit "have no active or closed account for the plaintiff" and "were unable to locate an account (open or closed)", which are true and accurate statements based on the fact Plaintiff was *denied* credit and therefore has no account with these companies.  See Plaintiff Credit Revised Disclosure from Experian Dated January 16, 2003 attached hereto as Exhibit H.

2

20.     Undisputed as to deletion of the US Bank tradeline and Plaintiff cannot admit

or deny the reason for deletion being pursuant to notification from US Bank

due to insufficient evidence.

21.     Disputed.  See Exhibit H.

Respectfully Submitted,
**MARY RUFFIN-THOMPKINS**

By: _____
            Attorney for Plaintiff

Krohn & Moss, Ltd.
120 West Madison Street
10th Floor
Chicago, Illinois 60602
Ph. No.:  (312)578-9428

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARY RUFFIN-THOMPKINS,                    )
                                          )
                   Plaintiff,             )
                                          )        Civil Action No. 03 C 0683
             vs.                          )        Judge Leinenweber
                                          )
EXPERIAN INFORMATION SOLUTIONS,           )
                                          )
                   Defendant.             )

**STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE**
**ISSUE OF MATERIAL FACT THAT ENTITLES THE PLAINTIFF TO A**
**JUDGMENT AS A MATTER OF LAW**

NOW COMES the Plaintiff, MARY RUFFIN-THOMPKINS, by and through her

attorneys, KROHN & MOSS, LTD., and respectfully submits this Statement of

Uncontested Facts, Description of the Parties and Statement of Jurisdiction and Venue in

accordance with LR 56.1 and in support of her Memorandum of Law in Response to

Defendant's Motion for Summary Judgment.

**STATEMENT OF FACTS**

1.      In August of 2001, MARY RUFFIN-THOMPKINS, ("Plaintiff") filed a

lawsuit against Grossinger City Toyota (hereinafter referred to as" Grossinger") in the

Circuit Court of Cook County, case no. 01 L 10047.  Said lawsuit alleged Defendant,

Grossinger City Toyota violated the Illinois Consumer Fraud and Deceptive Business

Practices Act and that Grossinger's actions constituted Common Law Fraud.   Said case

settled out of court, for Grossinger paying off the entire balance of the auto loan and

4

voiding Plaintiff's obligation to a contract to purchase a vehicle, in July of 2002. See Plaintiff's General Release attached hereto as Exhibit A.

2.     In addition to paying a monetary settlement to Plaintiff, Grossinger also agreed to "pay[ing] off the retail installment contract signed by the Plaintiff relating to the transaction in question by Grossinger City Toyota, Inc." See Exhibit A.

3.     On or before October 3, 2002, Plaintiff discovered that US Bank, the purported lender of the aforementioned auto loan, was reporting the account relating to the Grossinger settlement as a Repossession/Past Due 30 Days. On October 3, 2002, Plaintiff sent a dispute letter to Experian. See Plaintiff's October 3, 2002, Dispute Letter Attached hereto as Exhibit B.

4.     While Plaintiff's October 3, 2002, dispute letter did not specifically mention US Bank, it did request that the "repossession of an automobile be deleted immediately from [my] credit report." Plaintiff's dispute letter also included documentation supporting Plaintiff's position. See Plaintiff's Exhibit B.

5.     On October 14, 2002, Plaintiff received a response from Defendant Experian stating, "Using the information provided, the following item was not found: Grossinger City Toyota." However, Plaintiff was not disputing a Grossinger City Toyota tradeline, but the finance company tradeline reporting "Repossession" of a vehicle. See Exhibit B and Experian's Response to Plaintiff's Dispute attached hereto as Exhibit C.

6.     On October 21, 2002, Plaintiff wrote a dispute letter directly to US Bank regarding the tradeline reporting as a Repossession. Plaintiff again included supporting documentation in the October 21, 2002 letter **AND** sent copies to all three credit

reporting agencies, including Defendant Experian as another dispute.   See Plaintiff's Dispute Letter attached hereto as Exhibit D.

7.     On or about December 10, 2002, Plaintiff wrote yet another dispute letter to Experian regarding the US Bank tradeline and one again included documentation her position.   See Plaintiff's Dispute Letter to Experian Dated December 10, 2002 attached hereto as Exhibit E.

8.     According to Experian's records, Plaintiff's dispute was received on December 23, 2002 and on January 3, 2003, Experian sent a Consumer Dispute Verification (hereinafter referred to as "CDV") Form to US Bank requesting they respond to CDV on or before January 9, 2003.   See the CDV Form Dated January 2, 2002 attached hereto as Exhibit F.

9.     When Experian receives a consumer dispute, it is forwarded to one of three hundred sixty (360) customer service representatives (hereinafter referred to as "representative").   See Deposition of Kimberly Hughes attached hereto as Exhibit G at p. 7.

10.    The assigned representative then takes the consumer's dispute and reduces the dispute to one of thirty two (32) preformatted reason codes.   One reason code MUST be selected for the dispute to precede.   See Exhibit G at p. 21.

11.    The representative then enters the dispute code which translates to a specific dispute.   In Plaintiff's case the reason code entered was 030 which translated to "Claims Company Will Change or Delete."   See Exhibit F.

12.     After the reason code is entered, there is additional space for the representative to include up to two lines of additional information.  This information is then sent to a system which generates a CDV.  See Exhibit G at pp. 22 and 23.

13.     The CDV is a synopsis of the account:  Name, Address, Social Security Number, Account Information and Dispute Code.  See Exhibit F.

14.     After the CDV is sent to the furnisher, the representative's job is expired and he or she will no longer have any involvement in receiving a response to the CDV. See Exhibit G at pp. 33 through 35.

15.     In the CDV, Experian describes Plaintiff's dispute to US Bank as "Claims Company Will Change or Delete"  Experian's CDV did not include any additional information or supporting documentation that Plaintiff sent to Experian nor did Experian's CDV mention Plaintiff's previous lawsuit or that the tradeline was inaccurately reported as a Repossession in the additional space provided.  See Exhibit F.

16.     In fact, in the Deposition of Kimberly Hughes, specialist in consumer affairs, in the case of Michael Moline vs. Experian Information Solutions, case no 03 C 1375, in the United States District Court for the Northern District of Illinois, she states that Experian would not send supporting documentation onto a furnishing company, simply because Experian does not have the ability to do that.  See Exhibit G at pp. 62-64.

17.     When Experian receives a response to the CDV it has sent out, their policy is to follow what the furnishing entity says, reason being that they, "...have contracts with the subscribers stating what information they will have in their records and in what circumstance they will verify information.  They're reliable reporters.  And so unless the

7

consumer provides [us] with documentation to support their position, we do go with [our] subscribers." See Exhibit G at p. 107

18.    In US Bank's response to the CDV returned to Experian on January 9, 2003, US Bank states, "Account Closed Zero Balance". See Exhibit F.

19.    US Bank's response to the CDV did not address the Plaintiff's dispute regarding reporting the tradeline as a repossession, as Experian's CDV solely stated, "Claims Company Will Change or Delete." See Exhibit F.

20.    On January 16, 2003 Plaintiff received a Revised Disclosure from Experian stating the US Bank tradeline would remain reported as a Paid/Repossession. See Plaintiff's Revised Disclosure from Experian Dated January 16, 2003 attached hereto as Exhibit H.

21.    Plaintiff has been denied credit from Carmax Auto Finance, First National Credit Card, Premier Bankcard Inc. and CorTrust Bank since April of 2002. Experian admits providing these companies with copies of Plaintiff's credit file with the US Bank tradeline reporting as a Repossession. See Exhibit H at p. 6.

22.    On January 30, 2003, Plaintiff filed the instant lawsuit against Experian Information Solutions, alleging violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et. seq.* as amended. See Plaintiff's Complaint attached hereto as Exhibit I.

23.    On or about February 16, 2003, Plaintiff requested an additional copy of her Experian credit file to find the US Bank tradeline still reporting as a Paid/Repossession. See Plaintiff Consumer Disclosure from Experian Dated February 16, 2003, attached hereto as Exhibit J.

24. On or about April 2, 2003, Plaintiff requested an additional copy of her Experian credit file to find the US Bank tradeline still reporting as a Paid/Repossession. See Plaintiff Consumer Disclosure from Experian Dated April 2, 2003, attached hereto as Exhibit K.

25. On or about April 5, 2003, Experian sent to Plaintiff a Revised Disclosure stating the US Bank tradeline had been deleted from Plaintiff's credit file. This was over six months from the date of Plaintiff's initial dispute and after Plaintiff had been denied credit. See Plaintiff's Revised Disclosure from Experian Dated April 5, 2003 attached hereto as Exhibit L.

26. Other than Plaintiff's inaccurate tradeline with US Bank, Plaintiff's credit reports reflect four separate accounts all in good standing reflecting, "Paid/Never Late." See Exhibits C, H, J, K and L.

## DESCRIPTION OF THE PARTIES

1. Plaintiff, Mary Ruffin-Thompkins, is an individual who currently resides in State of Illinois.

2. Defendant Experian Information Solutions is a corporation organized and existing under the laws of Texas which is authorized to do business has and maintains extensive offices in the State of Illinois. Experian Information Solutions is a "consumer reporting agency, as defined by the Fair Credit Reporting Act, 15 U.S. C. §1681a(f).

## FACTS SUPPORTING JURISDICTION AND VENUE

1.      Jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331 and 1337 because this case involves federal questions that arise under the Fair Credit Reporting Act 15 U.S.C. §1681 et seq. as amended and venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because the Defendant conducts business within the district.

Respectfully Submitted,
**MARY RUFFIN-THOMPKINS**

By: _____

Attorney for Plaintiff

Krohn & Moss, Ltd.
120 West Madison Street, 10th Floor
Chicago, Illinois 60602
Ph. No.:  (312)578-9428

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARY RUFFIN-THOMPKINS,                    )
                                          )
        Plaintiff,                     )
                                          )        Civil Action No. 03 C 0683
   vs.                                 )        Judge Leinenweber
                                          )
EXPERIAN INFORMATION SOLUTIONS,           )
                                          )
        Defendant.                     )

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS' MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, MARY RUFFIN-THOMPKINS, by and through her attorneys, KROHN & MOSS, LTD., and in response to the Motion for Summary Judgment filed by the Defendant, EXPERIAN INFORMATION SOLUTIONS, states as follows:

### INTRODUCTION

Plaintiff, MARY RUFFIN-THOMPKINS, filed her Complaint against EXPERIAN INFORMATION SOLUTIONS in January of 2003 based on violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended.* EXPERIAN INFORMATION SOLUTIONS ("Experian") filed a Motion for Summary Judgment as to Plaintiff's Complaint. Plaintiff's complaint against Experian is that they are reporting to potential creditors that Ms. Ruffin-Thompkins has endured an automobile being repossessed from her. Though this is entirely and utterly untrue, and Plaintiff informed Experian of this fact, Experian refused to adequately investigate

2

plaintiff's claim and correct their reports. This memorandum of law is in response to Defendant Experian's Motion.

## I.  **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will only be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment should only be granted when there exists "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(b). Only disputed material facts, facts that would influence the outcome of a suit, would bar an order for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When moving for summary judgment, that party who desires the motion shoulders the burden of showing that there does not exist an issue of material fact. *Id.* To determine if summary judgment is appropriate, the court must look at the "evidence in the light most favorable to the non-moving party." *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206 (7th Cir. 1993) (citing *Anderson*, 477 U.S. at 255).

Furthermore, the movant must point to the lack of a genuine issue of material fact in the pleadings, and upon success, the non-movant must show, through depositions, interrogatories, admissions, and affidavits that there does exist a genuine issue of material fact, requiring the issue to be determined by the trier of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

3

## II.   BACKGROUND OF FAIR CREDIT REPORTING ACT

The FCRA was crafted to protect consumers from the transmission of inaccurate information about them. Kates v. Croker National Bank, 776 F.2d 1396, 1397 [9th Cir. 1995]. It is to be liberally construed in favor of consumers, not in favor of the credit and credit reporting industries.  Guimond v. Trans Union Credit Information, Co., 45 F.3d 1329 [9th Cir. 1995] [Cal.]; Kates v. Croker National Bank, 776 F.2d 1396, 1397 [9th Cir. 1995]; Litschitz v. American Express Co., 560 F.Supp. 458 [U.S.D.C. Pa. 1983]; Jones v. Federated Financial Reserve Corp., 144 F.3d 961 [6th Cir. 1998] [Mich.]; Klapper v. Shapiro, 586 N.Y. S.2d 846 [N.Y. Sup. 1992]; Hovater v. Equifax, Inc., 823 F.2d 413, 417 [11th Cir. 1987].

The FCRA was created "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." Equifax, Inc. v. Federal Trade Comm'n, 678 F.2d 1047, 1048 [11th Cir.1982], quoting S.Rep. No. 517, 91st Cong., 1st Sess. 1 [1969]. Courts have held that a credit reporting defendant is liable for the harm from the initial reporting and any and all republications which were reasonably foreseeable, particularly since the reporting was made via their authorized agents, the credit reporting agencies. Luster v. Retail Credit Co., 575 F.2d 609 [8th Cir. 1978] [Ark.]; Sheppard v. Nabb, 581 A.2d 839 [Md. 1990]; Sears, Roebuck & Co. v. Ulman, 412 A.2d 1240 [Md. 1980]. Each transmission of a consumer's credit report is a separate and distinct tort. James Young v. Equifax Credit Information Services, 294 F.3d 631 [5th Cir. 2002]; Hyde v. Hibernia Nat. Bank in Jefferson Parish, 861 F.2d 446 [5th Cir. 1988], cert. denied, Credit Bureau Services - New Orleans v. Hyde, 109 S.Ct. 3199, 491 U.S. 910, 105 L.Ed.2d 706 An erroneous or careless report serves no purpose but to

substantially damage the target of the report, who after publication can do little to correct the damage caused by the report. Bartels v. Retail Credit Co., 175 N.W.2d 292 [Neb. 1970].

Technical accuracy is not the standard, a consumer report must be accurate to the maximum possible extent.   In essence, **the trier of fact** must weigh potential that information will create a misleading impression against availability of more accurate information and the burden of providing such information. Curtis v. Trans Union & Ford Motor Credit by the Northern District of Illinois.  2002 WL 31748838 (N.D.Ill., Dec 9, 2002; Cisneros v. U.S. Registry, Inc., 46 Cal.Rptr.2d 233, 39 C.A.4th 548 [Ca. App. 2d Dist. 1995] (emphasis added).

Most recently in Parker v. Parker, 124 F.Supp.2d 1216 [U.S.D.C. N.D. Ala. 2000] the court held that "*a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more...*," citing Philbin, infra, at 965, which interpreted the Eleventh Circuit's ruling in Cahlin, supra.  The court noted that upon proof of an error, the "*burden shifts to the defendant to prove as an affirmative defense the presence of reasonable procedures*." Id. Like in Cahlin, the credit bureau may only prevail in showing that the report was accurate. Cahlin, at 1156.  The Parker court, following Cahlin, held that if the report contains an error, then "whether defendants had in place reasonable procedures to report information and detect disparities is a question for the jury, not the court."   Summary judgment was denied.

Courts have held that a showing of factual inaccuracies in a single report or inconsistencies between two files on one consumer may be adequate to prove lack of

reasonable procedures to assure the maximum possible accuracy of information in each consumer's file held by the agency. Stewart v. The Credit Bureau, Inc., 734 F.2d 47 [D.C. Cir. 1984]; Morris v. Credit Bureau of Cincinnati, 563 F.Supp. 962 [U.S.D.C. S.D. Ohio 1983]; Bryant v. TRW, Inc., 487 F.Supp. 1234 [U.S.D.C. Mich. 1980], affirmed, 689 F.2d 72 [6th Cir. 1982].

## III.   ARGUMENT

### A.   Experian Violated the Fair Credit Reporting Act by Not Performing a Reasonable Investigation into Plaintiff's Disputes so as to Assure Maximum Accuracy in Reporting.

By their own admissions, Experian Violated the Fair Credit Reporting Act and this must preclude summary judgment.

The Fair Credit Reporting Act States:

> **(A) In general.**--If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer. 15 U.S.C. §1681i(a)(1)(A)

> **(4)** In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting *agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A)* with respect to such disputed information. 15 U.S.C. §1681i(a)(4) (emphasis added).

This issue was discussed at length in Cushman v. Trans Union Corporation, 115 F.3d 220 (3rd Cir. Pa, 1997).   In Cushman, the court stated that it was not a reasonable reinvestigation for a reporting agency to simply "parrot back" information received from

other sources. <u>Cushman</u>, at 225. As a result, once an inaccuracy of some sort is pin-pointed, it is reasonable to conduct further investigation ***beyond the original source*** of information. <u>Id.</u> at 225 (emphasis added). ***An investigation that merely shifts the burden to the consumer and the creditor cannot fulfill the obligations contemplated by the statute.*** <u>Id.</u> at 225 (emphasis added). Once an inaccuracy of some sort is pin-pointed, it is reasonable to conduct further investigation beyond the original source of information. <u>Id.</u> at 225. An investigation that merely shifts the burden to the consumer and the creditor cannot fulfill the obligations contemplated by the statute. <u>Id.</u> at 225.

The language makes it clear that Experian's obligation is not to just notify the furnishing company of the dispute and await their response, but to also independently investigate the dispute. In this case, the defendant virtually admits that they copied the procedure in <u>Cushman</u>. Experian claims that they received a written communication from the Plaintiff disputing to accuracy of the account. They then proceeded to generate a CDV form and ship it to the furnishing company. A CDV is merely Experian's attempt to reduce Plaintiff's dispute into a coded message that echoes plaintiff's dispute. When a consumer writes to Experian, the agent reviews that dispute to determine what "dispute code" to enter into their system. The dispute code essentially notifies the creditor how Experian has defined the dispute (for example: dispute code #030 translates to "claims company will change or delete". There are 32 different dispute codes that the agent has from which to pick. A CDV Form is generated with this dispute code and then goes out to the creditor/subscriber and Experian waits for the response. At that time, the investigator's job is complete as the response to the CDV is handled automatically by accepting the subscriber's response as true. Experian does not, and in this case did not,

7

perform any investigation of their own of any sort. Experian merely waited for a third party bank to send back the CDV and then parroted that information back on Ms. Ruffin-Thompkins' credit file. Experian admittedly places the burden of the entire investigation into the hands of another company and ignores plaintiff's claims. They merely act as an information conduit (albeit a poor one in this instance) by passing information between consumer and creditor. This is by no means reasonable as a matter of law. Whether this was reasonable under the circumstances must be left to the fact finder.

In another similar lawsuit, the deposition took place of Kim Hughes, who was disclosed in this case. The deposition revealed that Experian is engaged in identical conduct as Trans Union in <u>Cushman</u>. Upon receiving conflicting information between the consumer and the furnisher, Experian automatically adopts the position of the subscriber/ "furnisher." The deposition transcript, attached hereto as Exhibit G, reveals the following:

Q.:   If you have a consumer on one end saying this is absolutely not mine, but the subscriber on the other end is saying we have all three identifiers, yes, it is, you are going to gowith the subscriber's version?

A.:   Yes.

Q.:   Is there a reason why you choose to go with the subscriber version?

A.:   We have contracts with subscribers stating what information they will have in their records and what circumstances they will verify information. They are very reliable reporters. And so unless the consumer provides us with some documentation, we go with our subscribers.

Q.:   Has Experian ever conducted – or is Experian aware of any study that indicates statistically which side of the fence is more correct...?

A.:   I don't know.

Deposition of Kimberly Hughes in the Matter of <u>Michael Moline</u>

<u>v. Experian,</u> 03 C 1375, attached hereto as Exhibit G at p. 107.

This reveals that Experian is has a policy of accepting the furnisher's response to conflicting positions regardless of what support a consumer may have.   There is no basis for them accepting one side of a conflict as true aside from the fact that they have a contract to do so.   Given that the plaintiff forwarded a legally executed document, this approach is wholly unreasonable and a willful neglect of consumer's rights.

**B.      There Remains a Question of Fact as to Whether the Plaintiff has Suffered Damages as a Result of Defendant's Conduct.**

**1.      ACTUAL DAMAGES**

Experian claims that the plaintiff cannot proof that their failure to investigate and correct Plaintiff's credit reports was the cause of any damages.   Experian is incorrect in this assertion and ignores existing case law.

Plaintiff was denied credit on at least three occasions after Experian failed to remove the inaccurate information from Plaintiff's report.   Plaintiff is damaged in her inability to obtain credit due to the harmful information on her report. <u>Milgram v. Advanced Cellular Systems, Inc.</u>, 1990 WL 116322.   Plaintiff has been denied credit from Carmax Auto Finance, First National Credit Card, Premier Bankcard Inc. and CorTrust Bank since April of 2002.   See Exhibit H at p. 6.

Experian claims that their exhibits 11, 12 and 13 attached to their motion reveal that Plaintiff has not been denied credit.   They are misleading the court in this regard. The documents provided by Experian in no way state that they did not deny credit to Ms. Ruffin-Thompkins.   Instead, the documents merely tell us that these companies have no

open accounts for the Plaintiff.[1]  In fact, taken with the proof Experian provides in their report dated April 5, 2003, attached hereto as Exhibit L (Exhibit 9 of Defendant's Motion) that these companies received the Plaintiff's credit file through Experian, these letters and plaintiff's testimony indicate that credit was actually refused.

A plaintiff may be entitled to damages for humiliation and mental distress even where there is no pecuniary loss. Fischl v. General Motors Acceptance Corp. 708 F.3d 143 (5th Cir. 1983).  Under an FCRA case, the Plaintiff is not required to produce evidence of emotional damages with a high degree of specificity. Philbin v. Trans Union, 101 F.3d 957 (3rd Cir. 1996). Moreover, in the recent case of Scheffer v. Experian, 02-7404, *supra*, the court stated that "at the very least, the plaintiff may be able to suffer from the emotional distress he may have suffered in connection with his efforts to correct the error in his…consumer file…" Scheffer, attached hereto as Exhibit M at p. 6.

## 2.  STATUTORY DAMAGES – WILFULL VIOLATION OF THE FCRA

Plaintiff also states a claim for statutory damages which are provided for under the Fair Credit Reporting Act.   The Act states:

> "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> **(1)(A)** any actual damages sustained by the consumer as a result of the failure **or damages of not less than $100 and not more than $1,000;** or

---

[1] While one affidavit from CorTrust Bank does state that their records reveal no application was made, the others merely claim no account was opened.  However, this affidavit of the CorTrust Bank agent reveals that violations of law occurred. Either (1) CorTrust Bank impermissibly gained access to Plaintiff's credit file as they has no account with Plaintiff to review and did not review a credit application in violation of 15 U.S.C. 1681(b)(f); or (2) Experian impermissibly furnished plaintiff's credit file to CorTrust in violation of 15 U.S.C. 1681(b)(a) – dealing with permissible purposes for which a consumers file can be accessed.

> **(2)** such amount of punitive damages as the court may allow; and
>
> **(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."   15 U.S.C. 1681n (emphasis added)

A showing of malice or evil motive is not required to prove willfulness under the Fair Credit Reporting Act (FCRA); rather, the plaintiff must only show that the consumer reporting agency knowingly and intentionally committed an act in conscious disregard for the rights of the consumer. Dalton v. Capital Associated Industries, Inc., 257 F.3d 409 (4th Cir, 2001).

In the recent decision of Scheffer v. Experian, 02-7404, (Eastern District of Pennsylvania, Decided July 24, 2003) the court discussed the issue of willful conduct in the context of punitive damages.   The Court stated that punitive damages may be warranted where evidence shows that inaccuracies in credit reports arise from something more than an isolated instance of human error that the agency promptly cured.  The court stated that there was evidence of conduct by both Trans Union and Equifax which suggested that the problem was not mere human error.  The court cited to the deposition of Alicia Fluellen of Equifax, pp.85, 97-99, and 150.  Scheffer v. Experian, 02-7404, at p.7.

The deposition of Ms. Fluellen in that case is attached hereto as Exhibit N.  A review of the transcript reveals what the court was relying upon in finding willful conduct.

```
Q.:   What I'm asking is when the response comes back from the company
      that was furnishing information in the first instance and the
      company says this is correct –

A.:   Okay.
```

11

Q.:    -- and that's, it contradicts what the consumer is saying, what
       happens?

A.:    Right.  Again, we'll advise the consumer that this credit grantor
       has verified that this account is reporting correctly.  And of
       course, we send them their rights that they have the right to add
       a consumer statement to their credit file.

                                    ***

Q.:    And my question was, does that happen in every instance?  That's
       not some instances, that's --

A.:    Oh, no.  That does happen, yes, in every instance.

Q.:    So is it fair for me to say that unless the consumer provides one
       of the types of documents that you've mentioned, if the company
       furnishing the information says it's correct, it's going to stay
       on the credit file?

A.:    That's correct.

       Likewise, the deposition of Kim Hughes, quoted above, reveals the exact same

conduct. (supra at p.8).  The deposition revealed that Experian is engaged in a pattern of

identical conduct.  Upon receiving conflicting information between the consumer and the

furnisher, Experian automatically adopts the position of the subscriber.  There is no basis

for them accepting one side of a conflict as true aside from the fact that they have a

contract.  Given what is now known to the public in general about mixed identities and

identity theft, this approach is wholly unreasonable and a willful neglect of consumers'

rights.

       In the case at bar, plaintiff has shown that there remains a question of fact as to

whether there was a willful non-compliance with the re-investigation requirements of the

statute.  As explained above and as shown in the record, Experian did not even follow the

mandates of a statute created especially for their business.  Experian did not consider

anything in Ms. Ruffin-Thompkins' dispute.  Experian merely shifted the burden to the

furnishing company by doing nothing more than reducing Plaintiff's written disputes and

supporting documents to a number translating to "Claims Company Will Change or Delete". They waited for the response, and then parroted the response to the plaintiff and adopted it as their own.  It seems apparent that the real point is not that the investigation was unreasonable, but that there was no investigation at all.  The violation and complete ignorance of the responsibilities defined by the statute, 15 U.S.C. §1681i(a)(4).  Given these facts, a finder of fact may deem this conduct willful.  Plaintiff would therefore be entitled to collect a statutory penalty from Experian.

## CONCLUSION

The FCRA, crafted to protect consumers from the transmission of inaccurate information about them, provided certain mandates for credit reporting agencies such as Experian.  These mandates were not followed.  In blatant and reckless disregard for the plaintiff's rights, Experian failed to perform a reasonable investigation to assure *maximum accuracy* in reporting.  They failed to have any procedures in place to assure maximum accuracy, and they continued to publish false information about the plaintiff.  As a result, he suffered actual damages, and considering the conduct, Plaintiff would be entitled to collect punitive damages as well.  As such, Plaintiff respectfully prays that this Honorable Court deny the Defendant's Motion for Summary Judgment.

Respectfully Submitted,
**MARY RUFFIN-THOMPKINS**

By: _____

Attorney for Plaintiff

Larry P. Smith
Krohn & Moss, Ltd.
120 West Madison Street, 10th Floor
Chicago, Illinois 60602
Ph. No.:  (312)578-9428

13

# SEE CASE
# FILE FOR
# EXHIBITS