Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 683 | **DATE** | 12/31/2003 |
| **CASE TITLE** | Mary Ruffin-Thompkins vs. Experian Information Systems, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Experian's Motion for Summary Judgment is GRANTED. Ruffin-Thompkins action is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

WAP — courtroom deputy's initials

JAN 02 2004 — date docketed

Document Number: 15

```
                IN THE UNITED STATES DISTRICT COURT    F I L E D
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION
                                                           DEC 3 1 2003
```

MARY RUFFIN-THOMPKINS,                    JUDGE HARRY D. LEINENWEBER
                                          U.S. DISTRICT COURT JUDGE
                    Plaintiff,
                                          Case No. 03 C 683
         v.
                                          Hon. Harry D. Leinenweber
EXPERIAN INFORMATION SYSTEMS,
INC.,                                              DOCKETED

                    Defendant.                     JAN 0 2 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mary Ruffin-Thompkins ("Ruffin-Thompkins"), a resident of the Northern District of Illinois, brings a one-count action against Experian Information Solutions, Inc. ("Experian"), an Ohio corporation that is authorized to do business in Illinois, alleging violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq. (2003). Before the Court is Experian's Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the motion.

### I. BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Ruffin-Thompkins. This case has its roots in a dispute that Ruffin-Thompkins had with Grossinger City Toyota ("Grossinger"). While the facts of the underlying dispute are not entirely clear, it appears that it involved allegations that

15

Grossinger had fraudulently entered into a contract with Ruffin-Thompkins for the purchase of a car. Eventually, Ruffin-Thompkins filed a lawsuit against Grossinger in the Circuit Court of Cook County. In July 2002, that case settled, with Grossinger agreeing to pay off the balance of Ruffin-Thompkins's loan and voiding her contractual obligation to purchase a car.

Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f). As such, it gathers consumer credit information from other sources that it uses to generate credit reports. These reports are available to the consumer or to other parties upon request. Experian enters the story because despite the settlement between Grossinger and Ruffin-Thompkins, US Bank, the lender for the loan in that case, reported the account to Experian as a "Repossession/Past Due 30 Days." Upon learning of this negative notation, on October 3, 2002 Ruffin-Thompkins wrote to Experian requesting that "repossession of an automobile be deleted immediately from my credit report." In her letter, she explained that she never had an account with Grossinger and that her lawsuit against the company had been settled in her favor. She enclosed an incomplete credit report dispute form and a letter from her attorneys to Grossinger stating their intent to represent Ruffin-Thompkins in her action against it. Neither Ruffin-Thompkins's letter to Experian nor the enclosed documents mentioned US Bank. None of the documents specified the account that she

wished to dispute. On October 14, 2002, Experian issued a response to Ruffin-Thompkins that explained that "[u]sing the information provided the following item was not found: Grossinger City Toyota." According to Ruffin-Thompkins's complaint, on October 21, 2002, she sent a letter directly to US Bank with copies to various parties including Experian, in which she requested that the repossession notation be removed from her account. Experian denies this because Ruffin-Thompkins never produced the document in the course of discovery despite Experian's request for such materials. Whether or not Experian received this letter is immaterial, however, because Ruffin-Thompkins does not mention it in her Response to Defendant Experian Information Solution's Motion for Summary Judgment (the "Response") and does not contend that it placed Experian on notice of the inaccuracy in her account.

On December 23, 2002, Experian received another letter from Ruffin-Thompkins that stated that she was disputing US Bank's report. She enclosed the same letter from her attorney to Grossinger that she sent with her October 3, 2002 letter and a letter from her attorney informing her of a settlement with Grossinger.

Experian handled Ruffin-Thompkins's request for a reinvestigation by following an established procedure for handling consumer disputes. It forwarded her letter to one of its customer service representatives for review and processing. On January 2,

2003, that representative generated a Consumer Dispute Verification form (the "CDV"), and sent it to US Bank. A CDV identifies the consumer and the basis for the consumer's dispute and asks the creditor to verify or amend the reported information. In this case, the CDV described the dispute as "claims company will change or delete." US Bank returned the CDV to Experian on January 9, 2003, stating that the account had been closed at the customer's request and that it had a zero balance. US Bank did not delete the account. On January 16, 2003, Experian mailed confirmation of the results of the investigation to Ruffin-Thompkins. The confirmation summary indicated that the US Bank account would remain reported as a Paid/Repossession but that Experian had added the comment, "[a]ccount closed at consumer's request," to her credit report. The summary also informed Ruffin-Thompkins that if she disagreed with the outcome of the investigation, she could contact the creditor directly or could add a statement to the credit file disputing the accuracy or completeness of the account information.

Despite this offer, Ruffin-Thompkins made no further contact with Experian. Instead, on January 30, 2003, she filed the instant action against the company. On April 5, 2003, pursuant to US Bank's instructions, Experian deleted the US Bank account from Ruffin-Thompkins's file and sent her a Revised Disclosure to inform her of the deletion.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the Court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

## B. Count I - FCRA

Ruffin-Thompkins brings this suit pursuant to several sections of the FCRA. Specifically, she alleges that Experian: (1) willfully and negligently failed to maintain reasonable procedures to assure maximum possible accuracy in its credit report in violation of § 1681e(b); (2) willfully and negligently failed to conduct a reasonable reinvestigation of the disputes and failed to delete the inaccurate information from her file after investigation in violation of 1681i(a); and (3) willfully and negligently failed to note her dispute on her report in violation of 1681i(c). As discussed in detail below, she has raised no genuine issues of material fact on any of these claims.

### 1. *Section 1681e(b)*

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b). In order to avoid summary judgment on her claim, Ruffin-Thompkins must raise a genuine issue of material fact as to each of the following four elements: (1) that the consumer credit report contained inaccurate information about the US Bank account; (2) that the inaccuracy was due to Experian's failure to follow reasonable procedures to assure maximum possible accuracy; (3) that she suffered actual damages; and (4) that her damages were

caused by the inaccuracy. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Zahran v. Trans Union Corp.*, No. 01 C 1700, 2003 WL 1733561, at *3 (N.D. Ill. Mar. 31, 2003). Experian does not suggest that the US Bank entry on Ruffin-Thompkins's credit file had no inaccuracies. Accordingly, the Court's inquiry begins with the second element of the § 1681e(b) claim.

### a. Reasonable Procedures

The FCRA does not impose strict liability for inaccurate entries. *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998). Instead, Ruffin-Thompkins must show that the "inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Id.* Reasonable procedures are those "that a reasonably prudent person would undertake under the circumstances." *Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 WL 22287351, at *3 (N.D. Ill. Oct. 2, 2003)(quoting *Philbin*, 101 F.3d at 963). While the determination of whether a procedure is reasonable is a question for the jury in most cases, if the reasonableness of the procedure is beyond question, summary judgment is appropriate. *Crabill v. Trans Union L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001).

Ruffin-Thompkins suggests that, pursuant to *Parker v. Parker*, 124 F. Supp. 2d 1216, 1225 (M.D. Ala. 2000), she may stave off summary judgment merely by showing an inaccuracy in her credit report. As a district court opinion, of course, *Parker* is not

binding on this Court and, respectfully, the Court disagrees with its outcome. Drawing on the Third Circuit's *Philbin* decision, *Parker* concluded that where the plaintiff's report was undisputedly incorrect, the question of whether the defendant's reporting procedures were reasonable was one for a jury. *Parker*, 124 F. Supp. 2d at 1225. This conclusion, however, does not necessarily follow from *Philbin*. In *Philbin*, the Third Circuit reviewed the approaches taken by other courts of appeals to the question of whether a plaintiff need provide any proof beyond the "mere fact of an inaccuracy" for a reasonable trier of fact to conclude that a credit reporting agency had not followed reasonable procedures. *Philbin*, 101 F.3d at 964-66. While the court did not decide among the various approaches (set forth by the Court of Appeals for the District of Columbia Circuit in *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.D.C. 1984)(per curiam), by the Ninth Circuit in *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995), and by the Eleventh Circuit in *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991)), it explained that under *any* approach, a defendant can prevail at the summary judgment stage if it adduces evidence that "demonstrates as a matter of law that the procedures it followed were reasonable." *Philbin*, 101 F.3d at 965. Regardless, *Crabill* is binding precedent on this Court, and as mentioned, it also suggests that in limited situations, the

reasonableness of an agency's procedure is resolvable on summary judgment.

In judging the reasonableness of Experian's procedures, the Court must weigh "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Philbin*, 101 F.3d at 965. In *Henson*, the Seventh Circuit held that a credit reporting agency was not liable under the FCRA for reporting inaccurate information obtained from a court's judgment docket absent prior notice that the information was incorrect. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994). It reasoned that verifying such information would be unduly burdensome and inefficient. *Id.* This reasoning has been extended to excuse credit reporting agencies from independently verifying information provided by creditors unless the agencies have prior knowledge that the information might be inaccurate, *Zahran*, 2003 WL 1733561, at *5, or that the source is unreliable. *Field v. Trans Union L.L.C.*, No. 01 C 6398, 2002 WL 849589, at *4 (N.D. Ill. May 3, 2002). Ruffin-Thompkins does not contest the fact that Experian did not learn of the inaccuracy in the US Bank account on her credit report until it received her letter on December 23, 2002. She adduces no evidence that prior to receiving that letter, Experian otherwise knew that the information it had received from US Bank was inaccurate or that US Bank was an unreliable source of information. As a matter of law, therefore, summary judgment must be granted on

Ruffin-Thompkins's § 1681e(b) claim as it relates to pre-December 23, 2002 inaccuracies on her report.

Experian's post-December 23, 2002 procedures were also reasonable as a matter of law. Because post-December 23, 2002 Experian was reinvestigating disputed information, an analysis of the reasonableness of the procedures it employed to assure maximum possible accuracy of the credit information on the US Bank account under § 1681e(b) involves an analysis of those procedures under § 1681i(a). This is so because § 1681i(a) governs reinvestigations of disputed information. The Court will assess the reasonableness of the reinvestigation in the next section in further detail. Briefly, however, it is clear that upon learning of a possible inaccuracy in Ruffin-Thompkins's credit report, Experian followed a procedure that was reasonable as a matter of law to assure maximum possible accuracy. Experian reviewed the materials sent by Ruffin-Thompkins and generated a CDV that described the dispute as "claims company will change or delete." It then forwarded the CDV to US Bank for investigation. US Bank returned the CDV to Experian a week later and reported that the account had a zero balance and had been closed at the customer's request. It did not order Experian to delete the account entirely. As discussed, there is no evidence that Experian knew that US Bank was not a reliable source of information, and it was reasonable to assume from US Bank's response that it had performed a complete investigation into the

matter. Experian modified the account according to US Bank's response and mailed confirmation of the results of the investigation to Ruffin-Thompkins. It received no objection from Ruffin-Thompkins. Given how little information Ruffin-Thompkins provided Experian on the dispute, the procedure Experian employed to assure the accuracy of its credit report was reasonable as a matter of law. *Lee*, 2003 WL 22287351, at *4.

### *b. Damages*

Even if Experian's procedures were unreasonable, Ruffin-Thompkins's claim would fail because she has not shown that there is a genuine issue of material fact as to whether she suffered any damages. In her complaint, Ruffin-Thompkins alleges that she: (1) was denied credit by various stores and banks; (2) incurred out-of-pocket expenses associated with disputing the information on her credit report; (3) suffered mental anguish and emotional distress from having incorrect, derogatory information about her transmitted to other people; and (4) received a decreased credit score which could hamper her ability to obtain credit in the future. In her response to Experian's interrogatories, Ruffin-Thompkins alleges that she received denials from Car Max, Amcore Bank, Premier Bank Card, Providian Financial, and Cortrust Bank. As support for this allegation, she points to her credit report, which indicates that Car Max, Premier Bank Card, First National Credit Card (not one of the companies named in her interrogatory response), and Cortrust

Bank requested her credit history. All but one of the requests for her credit history, however, took place well before December 2002, when Experian's period of potential liability began. While Premier Bank Card requested her report in January 2003, the reason for its request is unclear. Indeed, Experian submits an August 6, 2003 response to a subpoena for records from the Vice President and Cashier and Custodian of Records for Premier Bank, which indicates that the bank has no records of active or closed accounts for Ruffin-Thompkins or of any active or closed credit cards or denied credit applications. Moreover, despite the fact that credit applications and letters denying her credit would have been in her custody, Ruffin-Thompkins provides no documentary evidence to support her claim that these entities denied her credit applications.

Similarly, Ruffin-Thompkins adduces no evidence of any emotional distress or mental anguish. "When an injured party provides the only evidence of emotional distress, she must reasonably and sufficiently explain the circumstances of the injury, and not rely on mere conclusory statements." *Field*, 2002 WL 849589, at *6. This she has failed to do. Finally, it appears that she has abandoned her claims for damages relating to out-of-pocket expenses or to a decreased credit score. She fails to make any mention of out-of-pocket expenses let alone to set forth specific facts regarding the nature of those expenses. She also

fails to produce any evidence that she received a decreased credit score or that it has harmed her in any way.

### c. Causation

Because Ruffin-Thompkins has failed to adduce any evidence of actual damages, she obviously cannot show a causal link between the inaccuracy in her report and her alleged damages. Even if Ruffin-Thompkins had shown damages, however, her claim would have been extinguished by her failure to raise a genuine issue of material fact on the causation element. Under the FCRA, she must produce evidence from which a reasonable trier of fact could infer that the inaccuracy in her credit report was a substantial factor that brought about damages. *Philbin*, 101 F.3d at 968. Ruffin-Thompkins, however, presents no evidence whatsoever that the inaccuracy in her report was a factor at all in her alleged damages.

Having failed to establish a genuine issue of material fact on three out of the four elements of a § 1681e(b) claim, Ruffin-Thompkins's claim cannot stand and Experian's motion for summary judgement must be granted.

### 2. Section 1681i(a)

Ruffin-Thompkins also asserts that Experian is liable under § 1681i(a). That section states in relevant part:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency

> directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C.A. § 1681i(a)(1)(A).

Because the potential for liability under this section does not arise until the consumer reporting agency receives consumer notification about a potential inaccuracy in a credit report, Experian is not liable for failing to reinvestigate any inaccuracy before December 23, 2002. *Lee*, 2003 WL 22287351, at *6. As a result, the Court will focus only on whether Experian's reinvestigation procedures after that date were reasonable as a matter of law.

Under § 1681i(a)(1)(A), upon learning of a potential inaccuracy in a consumer's credit report, the credit reporting agency has a duty to reinvestigate to assure that the information is correct. *Id.* In certain circumstances, that duty includes going beyond the initial source of information and conducting an independent investigation. *Henson*, 29 F.3d at 287. Whether the credit reporting agency must take such additional steps depends on two factors: (1) "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable"; and (2) "the cost of verifying the accuracy of the

source versus the possible harm inaccurately reported information may cause the consumer." *Id.* at 287.

As described in detail above, after learning of the possible inaccuracy in Ruffin-Thompkins's credit report, Experian reviewed the materials that she submitted. From those materials it generated a CDV that it forwarded to US Bank for investigation. Experian then modified the account according to US Bank's instructions and mailed confirmation of the results of the investigation to Ruffin-Thompkins. The entire reinvestigation was completed within the statutorily required time period.

Experian was not obligated under the *Henson* factors to undertake further independent investigation. Ruffin-Thompkins had not alerted Experian to the possibility that US Bank was an unreliable source of information and she has adduced no evidence that Experian knew that US Bank was unreliable source of information. Indeed, Kimberly Hughes, a specialist in consumer affairs at Experian, testified in her deposition that subscribers such as US Bank have proved to be very reliable reporters. In this situation, there was no suggestion from US Bank's response that it had conducted anything but a thorough and complete investigation. Even though Experian had indicated that Ruffin-Thompkins believed the account would be changed or deleted, US Bank did not order the account deleted. Instead, it noted that the account was closed with a zero balance and asked Experian to change the account to

"account closed at consumer's request." Neither Ruffin-Thompkins's letter requesting a reinvestigation nor the attached documentation provided much information about her situation. Without any explanation, her letter merely asserted that she was disputing US Bank's report. The attached materials, letters from her attorneys, made no reference to US Bank. It is unclear what additional steps, if any, Experian could have taken given the scant amount of information Ruffin-Thompkins provided it. Moreover, Ruffin-Thompkins did not dispute the accuracy of the changes that Experian made on her account at the end of its investigative process. In the absence of any indicators of unreliability, Experian's CDV procedure satisfied its obligation under 1681i(a) as a matter of law. *Lee*, 2003 WL 22287351, at *7 n.11. Accordingly, Experian's motion for summary judgment on this claim is granted.

### 3. Section 1681i(c)

In her complaint, Ruffin-Thompkins alleges that Experian also violated § 1681i(c) of the FCRA by willfully and negligently failing to note her dispute of the inaccurate information on her credit report. She has failed entirely to address this claim in her Response. Accordingly, she has not demonstrated that there is a genuine issue for trial on this claim. Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex,* 477 U.S. at 322. In such a situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### *4. Punitive Damages*

Because Ruffin-Thompkins's claim under the FCRA cannot survive, it follows, *a fortiori,* that the Court must deny her claim for punitive or statutory damages. Even if she had survived summary judgment, however, her request for such damages would fail. Section 1681n of the FCRA provides that "[a]ny person who willfully fails to comply with any requirement imposed under [the Act] with respect to any consumer is liable to that consumer" for actual or punitive damages. § 1681n(a). To demonstrate willful noncompliance with the FCRA, Ruffin-Thompkins need not show malice or evil motive, but must show that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Philbin*, 101 F.3d at 970 (internal quotation marks and citations omitted). Acts such as "willful concealment, misrepresentations, or systematic deprivation of consumers' rights" could justify statutory or punitive damages. *Lee*, 2003 WL 22287351, at *7. Ruffin-Thompkins has not produced any evidence of intentional systematic noncompliance, willful concealment, or

misrepresentations.  Accordingly, her claim for statutory or punitive damages must fail.

## CONCLUSION

For the reasons set forth above, Experian's Motion for Summary Judgment is **GRANTED**.  Ruffin-Thompkins's action is dismissed in its entirety.

**IT IS SO ORDERED.**

/s/ Harry D. Leinenweber
Harry D. Leinenweber, Judge
United States District Court

Date: November 31, 2003